May it please the court. My name is Jose Aponte. I'll be representing Mr. Julio Alvarado Dubon this morning on our appeal from the United States District Court. The appeal specifically addresses two issues that were decided by Judge Locke in that honorable court. There was a motion to suppress that was filed by myself for my client. The issues when they were decided was that the search of the residence was based under voluntary consent given from my client. In the alternative the court also said that the officers were within their rights to proceed to a protective sweep based on the information that they had before them. I will address each of the issues. And when you said there's two issues these are related right in the sense that for you to win you have to win both of them. For the government to win the government only has to win one of them. That's correct. Okay thank you just want to make sure. To be clear I would have to show that first and foremost consent was not voluntarily given by my client. In that case the government that has the ability to say well if that's the case the officer still proceeded in under a protective sweep. I'll take them both in order. With respect to the consent issue the question is very simple is whether or not my client provided consent for the what the sweep or the search that the officers did preliminarily. I'm not going to try to rehash the entire information that's in the in the briefs but there was information received by the police about a potential quote-unquote mass shooting. And I this was in a time when there was much hysteria around this and I certainly understand there was a heightened alert on the part of police. The police receive information about a potential address and identification of this individual from that was received based on the informant tip that was so can I can I move this forward because your brief spends a lot of time in this too but do you agree with me the the going to the front door you have not challenged that and that doesn't implicate the fourth amendment at all. Correct. You don't disagree that a person let them into the apartment. No question. So I guess what else skipping to the end by the time the office at the moment the officers are standing inside the house the fourth amendment literally has nothing to say about anything that happened up until that moment. 100 percent. Okay so the only question is if in that moment they can your client consented and if he didn't consent whether the officers are allowed to do it anyway right. That's correct. Okay you also agree that this court has said consent is a factual finding reviewed for clear error. That's correct. So why was Judge clearly erroneous in concluding that your client consented? And judge and this is what I think is important with respect to the facts of this case. We are dealing with individuals who are not native English speakers and we know that because not only do we have the officers that are there to to investigate we also have a third officer who's a native Spanish speaker because they know they are dealing with Spanish speakers. I think that becomes an issue and I'll tell the court why. When we get to the point in time as the court said they've come in there's no question it was a knock and talk. My client let them into the residence they're standing in the living room when detective Kennery tells officer Ferraris let him know we're going to go look for other people. He doesn't ask he doesn't inquire he says let him know we are going to do this. At that point officer Ferraris translates that bit of information says hey we are going to go look for other people. And this is the key part is my client says yeah go ahead and check. That's the first part of the sentence. And he gestures. Judge Locke finds he gestures. Yes he does find that there was. Okay well that seems pretty important because if a person says we're going to do something and I say that's a key part of whether I'm agreeing to what they've just said they're going to do. For our discussion that's correct. I'll concede. He not just gestured he nodded. I think judge he directed towards the back. Go check and nodded and gestured toward the area to be searched with an upturned hand. Judge and I'll tell you looking at the videos I was more focused on the hand and the gesture as we were watching this throughout the preparation. But what's important judge is immediately upon that he says but my understanding is that in order for you to search you need a warrant. And that's a key point because Officer Kennery says we're going to go look. Officer Ferrer translates that a bit of information. My client says go ahead and check gestures and then he says but my understanding is Detective Kennery has already gone. Detective Kennery is already looking for whatever it is he's looking for. Well he's okay I take your point on that but why wasn't he entitled to do that? Because your client had said go check and gestured at that moment the searching officer is entitled to start searching right? Judge and but the point is there is no translation of what is said by my client. He gestures. I don't need to translate what a gesture and a nod means. A gesture and a nod means a gesture and a nod. Respectfully I disagree. I think that well you might but why was Judge Locke clearly erroneous in concluding that that's what I think what's important your honor is that in the very next when when my client says that to the to the officers about the search warrant. Officer Ferreira says we're going to check regardless. Is that okay? And the sergeant asked a question but doesn't finish. Is he acknowledging? So there is a there's there's some kind of discussion going on between Ferreira and my client in Spanish. The sergeant who's not doing the protective sweep about what is just occurring in that dialogue regarding the consent. I know that we have a gesture but there's a series of questions and statements made that are never addressed because they're never interpreted for either detective Kennery or the sergeant. There's we have there's a question that's being asked by my client about the ability to search based on the need for a warrant and sergeant goes on to say sergeant Roberts says is he acknowledging but that's never finished because at that point detective Kennery is already gone. What is your best response so judge I mean it's not like judge Locke doesn't address this I think you need to warrant to search but judge Locke addresses this and she says in my view that is a very ambiguous statement because on the one hand it could mean what you're what you're now asserting which is basically taking back what the person just said but it also could mean I know you I think you'd normally need a warrant but I have nothing to hide so I'm not going to insist and judge Locke says that statement even if translated is ambiguous as between those two meanings and thus would be insufficient to withdraw any consent that was just given and judge my argument to that is I certainly understand that's one way you can look at it but I still submit that if my client is inquiring about wait wait once you've conceded that it's one way you can look at it what how could it possibly be clearly erroneous for the district court to have looked at it precisely that way because I think when the sergeant asks the question is he acknowledging that sergeant is raising an issue whether or not there is consent I think that statement by sergeant roberts is what's most troubling because there's a dialogue that's not being interpreted it's it's a conversation between unfortunately in this case between a spanish-speaking officer and my client who's a native spanish speaker there's a question about a search warrant enough to the point of raising concern for the sergeant roberts to ask is he acknowledging which which goes to sergeant roberts I don't believe is thoroughly convinced that consent has been fully given does that matter under the fourth amendment I mean I guess if there's one message I take from the supreme court's fourth amendment cases is I'm not supposed to ask what an individual officer subjectively believed I understand that judge but I think if we're looking at the totality of the circumstances which is the standard that we need to apply when we're looking at whether or not consent was voluntarily given this case because were you there were you involved in the hearing yes sir judge this was my case in the you represent this fellow at the hearing yes sir your honor so you were there as well correct okay I'm sorry yes sir um and and to be fair and not very good to be a witness to judge not to bury lead but you are but you can you're not here as a witness I'm not here as a witness sir and to be fair I am a native spanish speaker it is my first language so I do acknowledge that when I represent clients I am an advantage with respect to them because I I understand we I appreciate that and I appreciate your work to represent this fellow thank you judge but again and I just wanted to know for sure yes sir if you were looking at a cold record like we are or if you were counsel to this fellow all the way through no judgment Mr. Anthony and I have been with this case since the beginning but judge Hydens to your you were at the hearing you weren't there at at the door or in the house I was not there at the door no sir your honor you were at hearing on the motion to suppress I would go I was there once that before this case originated at the state level on the alleged bomb threat case mass murder case yeah I was retained on that when those charges were dismissed by the state courts Mr. Alvarado Devon was subsequently arrested on federal charges and the court asked me to accept the appointment because I had done the state charges but you were present at the hearing before judge law yes sir your honor that's all I'm sure what I was getting out and I understood that's what you to be saying well make that clear though yes sir but judge Hines back to your point I think what my argument is in order to look at the totality of the circumstances this is complicated a little bit in my opinion and what may make it a clear error is that you have a language barrier that's creating issues to what I believe is a truly consensual um search that is alleged to have been granted that's the argument with respect to the uh to the consent with respect to the protective sweep your honor my time is running I'll try to get to that very briefly there's no difference between consent and a truly consent it's a consent period he had to consent regardless and judge Locke found he consented judge Locke found he consented my argument goes to the whether or not her her decision was a clear error given the confusion that you see in the your honor uh the officers um they are not there to effectuate an arrest as you do as they did in Maryland versus Bowie but we know that the courts are moving away from clearing just arrest as a basis for a protective sweep you can articulate facts um the government talks about all they always have to protect themselves yes sir no question and the public or if there are other possibly other people in a dwelling or a building sure no question about them too yes sir and here they had allegations of assault weapons and mass killings and all kinds of things like that I mean uh officers these are and these officers were dressed up in armored correct with chest protectors and all this stuff yes sir they always have to but particularly in this situation have to be on the lookout judge I agree but I want to make it dangerous whether they're with you said they're executing an arrest they weren't doing that here judge I'm starting with the the basis established in Maryland versus Bowie but I'm also acknowledging that there is case law that talks about it's not just whether they're there whether they are there for an arrest you can look at the facts surrounding why they are present and see if there are articulable facts that would make it reasonable for an officer to face effectuate the sweep that these officers do my argument against that your honor is that in this case the police rely upon a kind of a random of an anonymous tip they verify an address and a name when the police arrived that night they talked to my client who is not the person who is referred to as El Chapin or Mr. Balcarcel one in the same person who they believe is the target my client is there he says I live here my son is not here Mr. Balcarcel the person who is the target of this investigation comes out from the back they have pictures all three officers acknowledge that clearly the person in the picture is the person who's standing before them so at that point they have and he denied it was him he denied he would it was him but all three officers immediately said yes clearly this is the person before us and so they had him lying as far as they were concerned yes sir no question but my argument so they rely upon that they have the target of the investigation there there you know and I and I believe that at that point given the fact that there are three officers you have the two individuals you have them establishing Mr. Balcarcel who is the alleged target of this anonymous tip I think they have the information for them that they need if they want to look further I think they can take Mr. Balcarcel into custody which is never done he's not taken into custody that night he's not detained once the police leave at that point they have not taken any action with respect to Mr. Balcarcel so I'm not really quite sure what the the fear of Mr. Balcarcel was if they knew was him they believed it was him hardly because they had so these are arguments that assume you can do a frisk at least in some circumstance a sweep in some circumstances right okay because are you aware of any court of appeals post buoy that has actually grappled with buoys reasoning that has not said that you can do a protective for it sometimes you can do protective sweep even without an arrest judge I will concede that the most uh the most prevalent cases uh United States versus Everett uh 91 fed forth 698 and there's a reference to laudermill both of those all acknowledged but of course saying you can do it isn't saying you can do it here it's just saying you could do it all of them have have moved away from buoy saying you need an arrest to be able to do that they all that was my point I'm acknowledging the negative precedent that they're moving away from requiring just an arrest warrant you as an officer can articulate facts the question is whether the search on this day was merely a hunch that they would find something else or whether it was an articulable fact to be able to do the protective sweep I'm about to run out of time so I'll stop at this point thank you very much honors you'll save some time thank you sir Mr. Anthony good morning I'm Stephan Anthony for the United States may it please the court when the defendant told Richmond police officers who were allowed in his home without any confrontation that they could go ahead and check there's no one else here he clearly unequivocally and voluntarily before you go further into the house uh this was just a knock and talk only correct that's the way it started yes sir oh that's the way that's the way you get in without in terms of constitutional protection he opened the door and not to talk all right yes sir okay so but then they went straight away to look for somebody almost didn't they no sir or they didn't okay well tell me the conversation they had with the talk with the person who allowed them in for that scope of their being allowed to come in yes sir so the three officers enter the what I would call the living room area of the house and there is the defendant and another individual who goes by the name of Val Carsell at the rear of the living room and what the officers start to discuss with the defendant is do you know the person in a photograph I believe they have it on their phone initially they show him the picture he initially says I can't see it let me see it again they show it to him a second time and he says I don't know that person all right they then take the phone over to Mr. Val Carsell and they say do you know who this person is and he denies knowing who that person is he said no that's correct okay and then so that's the talk okay what else after that they both said they don't know the person they've been shown on the picture go ahead yes sir uh I believe it was Officer Kennery showing the photo Officer Kennery then goes back over to Officer Ferreras and shows the picture again and I believe it's Officer Ferreras who says well that's that's him pointing to Mr. Val Carsell and he says yes the same beard line and everything and they take the picture back over and they say that's not you and I don't I don't recall if Mr. Val Carsell either says nothing or denies again but at that point the officers had had denials from both the defendant and the suspect that the individual in the photo who was Mr. Val Carsell was not him so that was the talking portion initially of the knock and talk after that Officer Kennery asked Officer Ferreras to ask the defendant uh are there any weapons in the house and I believe are there anyone is there anyone else here and that's when well in America that's no problem right the Constitution you know it's brewing in all these cases that's that's that's the typical American writing tradition of having a gun I mean that's constitutionally protected it would be constitutionally protected not contraband it doesn't come with any kind of implications at all about illegal does it that's how it works for everybody else that's how it works for everybody else not if you can carry it around right okay but go ahead not in it not in and of itself is the possession of firearm illegal no sir sure but at that point the officer is coming to the home on the information that someone in that home possesses large caliber rifles has made a threat yeah but now you aren't you changing the scope now this is to knock and talk you've you've asked the question they have answered it so now you're saying because for what you know then it's almost then you it's a planned search almost isn't it no sir well the talking is over no talking is continuing but but he could have stopped you because he said he could have thrown you out not thrown you out but say get out of my home I think up until the point that the officers determined uh that there is a rifle in the house that matches the description the defendant certainly could have drawn consent or at least attempted to that did not happen here what happens is the officers come into the residence again on the information of a tip about potentially a mass shooting as they enter the home they see uh indicia of firearms possession of namely a handgun magazine I believe a rifle round on the mantle right near the front door they have the fact that the and the suspect Mr. Val Carsell have denied knowing that it is him in the photo and so at that point the officers are suspicious that there might be someone else in the home that could cause them harm and so officer Kennery says tell him that we're going to look around to see if there's anyone else in the home and that's when the defendant says go ahead and check there's no one and only after he says that does officer Kennery then begin to go toward the rear of the home to see if there was anyone so what was said to him was not a question but it was telling him that's a direct we're going to do this we're gonna we're going to do this right didn't ask may we so tell him we're going to do this is that right it was a statement yes sir right and other and then how many people there they were armed police officers right there are three armed police right and they told him we're going to do this and you say that the consent arose from that statement directed the consent rose arose from the statement of we're going to check to see if there's anyone else here yes sir do you really think he had a real opportunity to consent or to not give it yes sir three police officers they're armed with like SWAT team type right i don't know if they're armed like SWAT well it's why i mean they had bodyguards you know the police on the back and the big writing and their weapons right yes sir and they said that's what we're going to do and you think that that was consent well i think a couple things first of all the district court found that and i don't think there's any evidence that is clearly erroneous but beyond that what the district court found is that the tone of the officers the behavior of the officers despite having weapons nothing they did indicated a show of force they never displayed their weapons in any way it was simply a conversation they were having up until the point that they decided to make a walk around the house for other persons so there was nothing in that it wasn't a search it was protective suite is what was called right yes sir i'm sorry if i said search yes it was a protective suite uh because they were looking for individuals that may have may have been in the home that could cause them harm while they were lawfully present in the home and so again when the only looking for human beings in the home that's correct okay so you wouldn't go into any drawers or cabinets or anything like that that's correct and i do believe the officers could have gone into a closet potentially if the because the closet how long does protective sweep take it takes uh the amount of time reasonably necessary to dispel this one oh this one was about 15 seconds 15 seconds yes sir and that the record reflects that yes sir did the judge say that judge lock did find it was about a 15 second uh look around the residence and then in plain view as the officer is going through uh one of the bedrooms he sees what appears to be the same rifle uh about which they had received the tip the same rifle or the same type well same type of rifle i should say that had been described by the tipster it had and it had been described specifically that was a what ak-47 or ar-15 or i believe it was described as an uh ar-15 type 15 type yes but more they're aren't they they are legal right that's right again they're legal i mean you have both ways to be supreme court said those those things are legal well if people need them to protect themselves sure it could be legal in one context because i guess oh go ahead go ahead but i think the point is what they were looking for is not something of an illegal nature necessarily why did you get a warrant then well they're legal in some states we have said that uh maryland can make a male legal thing one two and they have yes sir why didn't you get a warrant if you had all these tipsters and then and search the house that you normally wouldn't have a chance for an independent magistrate to say whether or not this supposed i mean this sweep uh you know you had you had good grounds right to say that it's likelihood based on what we've been told by these uh people whether the informants were the tipsters were that there's contraband and or individuals who are suspects and you've gotten a warrant i mean that's what the fourth amendment is for but instead you come in and you say the person whose english is not their i guess their native tongue and then you tell him this is what we're going to do and then it's a protective sweep you know protective sweep really you don't really never mind go ahead well i'll speak to your question judge there may have been an opportunity to gain a search warrant at that point however there was the point of clarifying and confirming that the suspect did live there and so that was the purpose of going for a knock and talk to see if they could identify the suspect there and they did identify the suspect why did you arrest it right there while you're standing there with you well at that point they had a suspicion that he may have made the threat and that he may have possessed the firearm they hadn't confirmed any of that yet so the point was to get confirmation that the suspect lived there a and then do further investigation to show a or b that he may have made the threat and c that he also possessed the capacity that is the firearms uh that he was possessed and so the what the officers did i think is the least intrusive method they could have used which was not to get a search warrant and then also arrest the defendant or arrest the suspect without making those other preliminary investigatory steps to confirm that they had a basis to do that under the law this was all an investigation yes sir i wouldn't it might even be and there was no search conducted that's the position of the government that's correct and actually after the first firearm was seen in plain view they didn't go through searching the house by themselves at that point actually the defendant came to the bedroom and then started to show them what other firearms were and actually showed him where his identification documents wait do you think a search done with consent is not a search or do you think a search done with consent is categorically reasonable under the fourth amendment i would say it's both but that wasn't what happened here the consent was to go but how is not going into the other room a search i mean it may be reasonable it may be reasonable because the defendant consented it may be reasonable because it was a valid protective sweep but does that change that it's a search yes sir i believe a protective sweep would be different from a search wait wait hold on the fourth amendment only regulates searches and we agree that the fourth amendment regulates protective sweeps so if the fourth amendment regulates protective sweeps then protective sweeps have to be searches i agree they're not arrests i agree they're limited searches but i don't know what authority says they're not searches under the fourth amendment well that that may be a question of my own semantics and trying to distinguish sure it's not full-blown search i know it's not a custodial arrest it's not a there's no i don't want to confuse it with either some sort of need for probable cause and actually a more intrusive actual search and where they are going through drawers or pulling apart furniture or something like that i may have led you into that no no i think you expressed your your view to what how you feel about it but the thing is if so if you the police officers knock on my front door yes sir and i open the door and they see someone moving behind me in my home they can say you know i feel like i need to be protected i can go and and sweep for my protection that's basically what you're saying because it's not a search anyway you say it's just my protection and i can see a police officer might feel like i'm at the door i'm the threshold right here and i see somebody go that way but that's my home i can have 50 people 20 people in i guess in my home all of a sudden now because you need to be protected you can just walk in and say because of my protection that was the whole purpose because the person you were looking for the man said well that's him right there he's there you're finished so but you said you can go through the house because you feel you need protection that's a hypothetical you could go through my house because you saw someone walking across behind me into another room so who's that went i mean i feel threatened i'm going to go in and check on them and see if they have a gun or whatever you in that hypothetical that's not a search and you could just do that is that right uh no sir okay what's the limitation there then so the limitation in doing a protective sweep is the same as the limitation you would have in a terry stop the same as you would have in a michigan versus long situation the officer has to articulate specific facts which lead him to be concerned that someone in that residence poses a threat to him and therefore he needs to make sure that there's no one else in that residence what we're talking about is not just an officer because he's in the home gets to check it to see who is there or the absence of information in fact i believe one of the this court's cases if not ever it was in mortis specifically said the lack of information doesn't provide a basis to do a perfect protective sweep what we have to do is articulate facts to show that there is some risk to the officer and then along the lines of terry and long an officer can then do a protective sweep a very cursory short in time protective sweep to confirm that there is no one else present in the home that might pose a threat to you so in your hypothetical judge simply the officers being there without any or any other information about why the officer's there whether you would in fact even be a suspect they could be knocking on your door as a witness and certainly they wouldn't have any reason to believe at that point that there was somebody else in the someone else in the home would cause a threat to them they would not be able to then just go through your house in that circumstance in this circumstance what we were talking about is a set of officers with the information about a armed person making threats having long rifles when they are long guns rather uh one being once being a style of rifle that we know does cause mass damage and then when they get to the home and they're let inside they actually see of the presence of firearms the handgun magazine the rifle round they also are aware at that point that other people live there besides the two individuals they're talking to one of the first things they converse with the defendant about is that he has two other sons who live there now he also says they they aren't there at the moment but again we have the fact that the officer showing him a picture of the suspect and the defendant both denying it and the suspect himself denying that that's him when it is indeed him so all of that information taken together uh is what the district suspect was lying yes sir so you think the difference here the tips the tipster makes a big difference here right i think all of these facts makes a difference and it's a it's a conglomeration of them on which the district court uh how does the tipster matter for the consent issue well the tipster matters in terms of the protective sweep sure but for the consent issue doesn't matter at all right no i don't think the consent issue matter but only only in the sense that that's why they were there but the fourth amendment your your friend has conceded that the fourth that until that happens nothing that happened implicated the fourth amendment at all yes sir i don't think there's any dispute about the officers coming into the home being a matter of consent uh there was no mistranslation there um they were he was clearly able to understand officer ferreris indeed there were moments when the defendant was able to understand detective kennery speaking in english i'll give you an example when detective kennery goes and sees what he thinks is the rifle he says i got the rifle in the room the defendant responds directly to detective kennery and says no it's an air rifle and then officer ferreris tries to translate it but he's like no it's an air rifle i can show you and so he goes back to the room with officer kennery and that's where the other firearms are found so there's there's no mistranslation from the united states perspective in spanish and there's even some understanding of english by this defendant which also goes to the issue that there is no um lack of consent certainly no withdrawal of consent uh the district court found clearly um and unerroneously that this defendant consented uh just to say a little bit more about the protective sweep issue and why this court should extend it from the arrest context to non-arrest context again the the logic behind maryland versus buoy uh the united states believes is that the officers have a right to protect themselves when they have a reason or reason they can state reasonably articulable facts reasonable articulable facts that there might be someone else in the home that could cause threat and that is not dependent upon whether they are there to execute arrests conduct a or serve a protective order or on the basis of consent if they are in that presence of or in the presence of a residence and they have a basis to believe and they can articulate that that there might be someone else who can cause a threat to them the protective sweep would allow them to do that a shortened time protective sweep that is not as intrusive as any other search as judge heightens was mentioning um that the fourth amendment would prohibit and that would include children too right any any verse any person potentially be a threat to you right children certainly not an infant i don't think well i said children i didn't say infant but but children like six year olds seven year olds right i wouldn't want to put a particular limit based on you're right because there is no limit in terms of what you're urging the court to do in other words once you said anyone who could potentially cause harm to them i mean that's pretty much about you know five or six years old up well i think there's a logical limit that we could impose i know the court says you're talking about children not infants but i would argue infants fall under the category of children but some six-year-olds or have more uh dexterity and capacity than another six-year-old well i don't know what sort of situation almost six-year-old could shoot a handgun just pull the trigger if that's the case then judge i believe the officers would have the capacity to at least look to see if that person was there um and it might be if the kid comes around or somebody comes around there's more danger in terms of someone getting killed i mean other way you do this protective suite the broader you get it the more likely in terms of engaging people in the homes i mean i guess you know certain homes they come to they maybe they're more limited other homes they they feel more danger danger right and that says the problem terms that when that subjective idea it comes with demographics the neighborhoods you're in and everything the suite gets larger you get larger smaller based on what your perception is the demographics the neighborhood income level you know it comes some homes like a mansion you know you don't go anywhere at all other people have two room places we need to make sure there's right in here that that's that's the limiting aspect of it you know from a tipster that no independent magistrate ever assess reliability where they were who's calling was this a tip from somebody who didn't you know we don't know in the record who that was for example you know next door neighbor could say i believe my neighbor is doing something and they have guns so when you having a gun right don't you agree with that based on your logic of where you're going that that increases the the uh the concern of protection based on what the tip sort of said like here because there were guns implicated and i understand that but but what's the limiting aspect of the fourth amendment is getting it's very difficult to to see why the i thought one most powerful thing that the framers did they said about government they were suspicious about government no you can't come around my house and search without probable cause no you can't they were they were they were defying but now it's almost like well you know it's sweep how broad it is so what's the limitation i see a lot of time may i respond oh yeah absolutely thank you as long as you get questions you keep answering yes sir and judge there's a number of things you i want to try to address as many as i can in my a lot of time first of all i would say that it's not a subjective measure of what an officer feels and whether he just feels threatened again he must articulate reasonable uh a reasonable basis for high crime area that's articulated i'm sorry it's a high crime area they do it all the time you know high crime area that's it period that's normally it is i mean i've had a lot of cases that's what they say a high crime area well i would just say high unemployment whatever i would just say that the officer is not able to rely solely on subjective basis to do a protective sweep secondly in terms of whether the tip matters ultimately for a protective sweep purposes certainly it does i would also note that this wasn't merely a anonymous anonymous tip the record shows and i believe it is joint appendix page 52 the testimony of sergeant rogers is that one of the officers actually called the tipster and spoke to him directly and discussed both the description of the suspect and the threat that the tipster had alleged that he had made he had made so it wasn't merely an anonymous tip and the officers did other research beyond that before even going to the residence they spoke to the the suspect's boss to confirm both where he thought he stayed his identity that he potentially had connections to los zetas was a mexican cartel he also they also checked the calls for service in the area and they saw that maybe 10 days before so you had plenty opportunity to get a warrant for his arrest they had an opportunity to conduct an investigation you have plenty of opportunity to get a warrant but you just articulated that i don't think the magistrate would have any problem giving you a warrant and again the point of them going to the house was to use the least intrusive means that they could use which at that point was a knock and talk to confirm that the defendant was there the suspect was there and so i don't think the officer should be held at fault for being least intrusive when they could have been more intrusive that's not the least intrusive more intrusive to come to my home without a warrant well it's least intrusive because they were there by a way of consent and so you search on you don't have any consent they might kick the door in so that's more intrusive than asking can we come in and speak and you say yes commission police wouldn't do that i know them very well they'll knock on the door as ladies and gentlemen and say somebody here they wouldn't kick your door i would hope they would judge i'm sure they would i practice law in richmond for a long time criminal defense work and i don't think the richmond's finest as they call them would just do that well i won't comment on that judge i would just say that it's the least intrusive from my perspective if there's nothing else then i would uh thank you very much mr anthony thank we appreciate you mr aponte may please accord again your honor we talk about the least intrusive i think that's a fair point yes my client was cooperative to the extent he allows people the officers to come into his home they're engaging in a conversation as was asked he wasn't cooperative if he was lying to the officers judge the line was he was shown a picture on a phone he said do you recognize this he's first asked do you recognize the name el chapin is what he's asked like i don't know who that is he said i don't know anybody by that name then they show him here do you recognize this guy he he says he he has a hard time seeing it mind you he's about we're close to midnight he's woken out of a dead sleep he's got three armed officers in his living room i think he's still coming to senses when he's you know phone is put up to his face i mean it takes me a while to put on my glasses to be able to be coherent and see articulately or see clearly we will um judge when they come in that the off the defendant is cooperative the person who they ultimately believe is this person is the other person that comes out of the back of the house the person that they ultimately believe or the person that we've ultimately determined was in fact well the person they come in saying we're looking for about car cell we have this picture the officers all three of them throughout their testimony said we had no question that wasn't if that's the case detained mr about car cell i know you may not have enough to arrest you have enough to detain them you have enough to ask questions you have enough to freeze the scene and go get a search warrant but there was no intention the intention was to go find what they believe was the fruits of this crime that was kennery's intention when he didn't ask if he could go look what did when he didn't specifically ask for consent he said tell them we're going to go look that was a directive that was not a request that was not a asking for consent that was here's what we're doing and i think during the course of that interaction between the spanish-speaking officers and sergeant roberts there's a there's a question as to whether or not he could do that or whether consent had been unequivocally provided by mr alvarado dubon to the police officers to go back into the rest of the house didn't that also didn't they also to your client ask him if he knew if he recognized the name the first name they didn't he didn't just say el chapin right he gave the first name of the person they were looking for he gave the name el chapin and the second name that's given i think was just the last name i don't think well we gave a name it wasn't just a source of nickname sure and your client also said i have no idea who that is but again judge these are people who are you know he's there we don't know what my client knows but yes he denies knowing the name of the person is balcarcel um but then going back to the to the protective sweep judge um at this point the officer has had the ability to detain mr balcarcel and they believe is this mass terrorist which they don't they have mr alvarado dubon the homeowner they can detain them they can get a search warrant they can freeze the scene if they're going to freeze the scene to get a search warrant i think they can make sure nobody else there but they don't freeze the scene they immediately go to look for what they believe because kennery says hey i found it yes you found an air rifle that's what you found detective kennery you didn't find a weapon of mass destruction you found an error and then that that's where everything everything else flows from and i submit to the court that detective kennery steamrolled through this quote unquote consent got to the to the back rooms by using the idea of protective sweep when there were other lawful methods which could have been used to achieve the same result thank your honors thank you very much mr aponte and we recognize that you're appointed in this case we really appreciate your work absolutely what you do thank you we'll come down in greek council and then take a short break this honorable court will take a brief recess
judges: Robert B. King, Roger L. Gregory, Toby J. Heytens